IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| GREENBRIER LEASING COMPANY, LLC, an Oregon limited liability company fka GREENBRIER LEASING CORPORATION, a Delaware corporation,<br><br>                    Plaintiff,<br><br>     v.<br><br>JAMES B. CARROLL, dba JBC & ASSOCIATES, an individual residing in Illinois; and JBC & ASSOCIATES, a business entity located in Illinois,<br><br>                    Defendants. | CV. 05-1660-AS<br><br>OPINION AND ORDER |

ASHMANSKAS, Magistrate Judge:

    Plaintiff Greenbrier Leasing Company, LLC, ("Plaintiff") brings this action to recover more than $225,000 for scrap railcars shipped to defendants James B. Carroll and JBC & Associates ("Defendants"). Defendants have filed a motion to dismiss asserting that this court lacks personal jurisdiction over them.

Page -1- OPINION AND ORDER                                                                            *{SIB}*

Background

The parties agree that Plaintiff shipped over 40 railcars to Gary, Indiana,[1] in late spring and early summer 2004 based on a proposal sent to Plaintiff by Defendants on April 5, 2005. Defendants concede that they have paid Plaintiff over $60,000 for the scrap metal but denies that they owe Plaintiff any more money.

The negotiation process for the shipment of the scrap railcars occurred over a two-month period and consisted of two telephone calls and two letters. There is an issue of fact with regard to who made the initial contact. Robert A. Rea, Plaintiff's Vice President for Corporate Planning of Gunderson Rail Services, the entity responsible for the sale of Plaintiff's scrap railcars, states that Carroll called him at his office in Oregon in mid-February 2004 to inquire if Plaintiff had any railcars that needed to be scrapped. Rea Aff. at 2. Carroll explained that Ed Kindig, an employee of Plaintiff and a personal friend of Carroll's, told him that Rea was the person to talk to about scrapping railcars. Carroll indicates that it was Rea who placed the initial call to him at his offices in Illinois to inquire about where railcars could be scrapped in Chicago, Illinois. Carroll Aff. at 2.

After the initial contact, Carroll provided Rae with two scrap locations. Shortly thereafter, Rae contacted Carroll to discuss the scrapping of specific types and numbers of railcars and a price for the scrap metal. On April 5, 2004, Carroll forwarded a proposal sheet to Rae (Carroll states that he mailed the sheet while Rae states that it was faxed to him). Rae then made arrangements to ship Plaintiff's scrap railcars to Brandenberg Industrial Service, one of the scrap locations provided by Defendants. There is no evidence that the railcars were shipped from Oregon and defense counsel

---

[1] Gary, Indiana, was the car cutting location for Brandenberg Industrial Service in Chicago, Illinois.

represented at oral argument that, in fact, the railcars were shipped from various locations on the East Coast. On May 20, 2004, Brandenberg contacted Carroll to advise him that the railcars were arriving on Defendants' account. Defendants have sent Plaintiff three checks totally $60,000.

Legal Standard

Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether the forum state's long-arm statute permits the assertion of jurisdiction and whether assertion of personal jurisdiction violates federal due process. Fireman's Fund Ins. Co. v. National Bank of Cooperatives, 103 F.3d 888, 893 (9th Cir. 1996); Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1404-05 (9th Cir. 1994), cert. denied, 514 U.S. 1004 (1995). The relevant state statute applies even when the cause of action is purely federal. Fed. R. Civ. P. 4(k). However, Oregon's catch-all jurisdictional rule confers personal jurisdiction coextensive with due process. Or. R. Civ. P. 4L. Thus, the analysis collapses into a single framework and the court proceeds under federal due process standards.

Due process requires that a defendant, if not present in the state, "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 315 (1945) (internal quotation marks omitted). Minimum contacts can be demonstrated through facts supporting either general or specific jurisdiction over the defendant. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). Plaintiff bears the burden of establishing personal jurisdiction through a prima facie showing of jurisdictional facts. American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 912 (9th Cir. 1990).

Discussion

Plaintiff concedes that this court lack general jurisdiction. Accordingly, this court will consider whether it has specific jurisdiction over Defendants.

Specific jurisdiction refers to a situation in which the cause of action arises directly from a defendant's contacts with the forum state. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). The Ninth Circuit employs a three-part test to determine whether the exercise of specific jurisdiction comports with due process. Ballard v. Savage, 65 F.3d 1495 (9th Cir. 1995); Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). First, the defendant must perform some act or consummate some transaction within the forum by which it "purposefully avails" itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum and having "fair warning" that a particular activity may subject it to jurisdiction. Burger King v. Rudzewicz, 471 U.S. 462, 472, 475 (1985). Second, the claim must be one which arises out of or results from the defendant's forum-related activities. Third, the court's exercise of jurisdiction must be reasonable. Ballard, 65 F.3d at 1498; Roth, 942 F.2d at 620-21.

The facts of the case at hand are virtually identical to those addressed by the Ninth Circuit in Gray & Company v. Firstenberg Machinery Company, Inc., 913 F.2d 758 (9th Cir. 1990). In Gray, the plaintiff, an Oregon company, contacted defendant at its principal place of business in California to inquire about the purchase of a used filter. Defendant located a filter in Illinois and advised plaintiff. Plaintiff traveled to Chicago, Illinois, to inspect the filter and negotiated a $1,000 reduction in the purchase price. Defendant forwarded an invoice to plaintiff in Oregon. After the filter arrived in Oregon, plaintiff determined the filter was inoperable and filed an action in this court to rescind the purchase contract. Id. at 758.

The Ninth Circuit held that defendant's contacts with the state of Oregon fell "in the category of 'attenuated contacts' insufficient in themselves to establish defendants have purposefully availed themselves of the benefits and protections of the forum's law." Id. at 761.  The court relied on the fact that defendant did not have any contact with Oregon prior to this transaction, had never sought or done business in Oregon and did not have any officers or agents here.  The only contacts in connection with the sale were defendant's response to plaintiff's solicitation for a filter, defendant's telephone conversations with plaintiff, defendant's mailing the invoice to plaintiff and plaintiff's payment. Id. at 760-61.  The court found in favor of plaintiff on the "arising out of" requirement reasoning that "but for" defendants sale of the defective filter, plaintiff would not have been injured. Id. at 761.  Finally, the Ninth Circuit found that defendant's purposeful interjection into Oregon was minimal, that Oregon, California and Illinois had all generally adopted the Uniform Commercial Code and that the remaining reasonableness factors did not weigh heavily in either party's favor.  The Ninth Circuit determined that the district court lacked personal jurisdiction over defendant remanded the action with instructions to dismiss or transfer the action. Id.

In the case currently before the court, while there is some question about who placed the initial telephone call, it is clear that Plaintiff was driving the transaction. Either Plaintiff called Defendants or Defendants called Plaintiff at the direction of one of Plaintiff's employees.  Thereafter, Defendants did not take any affirmative acts but merely responded to requests from Plaintiff for a listing of scrap locations in Illinois and then for specific terms and numbers for the transaction.  As in Gray, Defendants had no prior contacts with the State of Oregon and their attenuated contacts with regard to this transaction are insufficient to support a finding that Defendants purposefully availed themselves of the opportunity to do business in Oregon.

This action did arise out of Defendants' contacts with Oregon under the "but for" test. However, jurisdiction in Oregon is not necessarily reasonable. Defendants' purposeful interjection into Oregon was minimal and Oregon and Illinois have similar laws governing this dispute. The railcars are located in Illinois and the burden on either party traveling to another state to participate in the action is equal. Oregon's interest in protecting its citizens weighs in favor of Plaintiff but is not sufficient to overcome the lack of Defendants' actions in the state. Defendants' contacts with the state of Oregon are insufficient to justify the exercise of personal jurisdiction over it.

## Conclusion

Defendants' motion (#14) to dismiss is GRANTED.

DATED this 12th day of June, 2006.

    /s/   Donald C. Ashmanskas
    DONALD C. ASHMANSKAS
    United States Magistrate Judge